# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **ORLANDO BETHEL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:24-00135-JB-B** |
| | ) | |
| **UNITED PARCEL SERVICE, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

This action is before the Court on the following Motions to Dismiss *pro se* Plaintiff Orlando Bethel's Third Amended Complaint ("Complaint") and the corresponding responses and replies:

1) Defendants United Parcel Service, Inc. ("UPS"), William Plybon ("Plybon"), and Tara Austin's ("Austin") Motion to Dismiss and brief in support thereof (Docs. 78 and 79), Plaintiff's Response (Doc. 94), and Defendants' Reply (Doc. 95).

2) Defendants Caleb Hines Ashcraft ("Ashcraft") and Anthony T. Hutcherson's ("Hutcherson") Motion to Dismiss and brief in support thereof (Docs. 80 and 81), Plaintiff's Response (Doc. 88), and Defendants' Reply (Doc. 93).

3) Defendant William Ezell's ("Ezell") Motion to Dismiss and incorporated brief in support thereof (Docs. 77), Plaintiff's Response (Doc. 86), and Defendant's Reply (Doc. 92).

A motion hearing was held on February 5, 2025, with counsel for Defendants and *pro se* Plaintiff was present. After careful consideration of the relevant filings and arguments and for the reasons stated at the hearing and dictated herein below, Defendants' motions are **GRANTED IN PART and DENIED IN PART.**

I.      **Factual and Procedural Background**[1]

This action arises out of Plaintiff, Orlando Bethel's ("Bethel") employment as a Flex Part-Time Local Sort Supervisor with United Parcel Service ("UPS").  (Doc. 76).  Bethel has been employed in that capacity with UPS since April 11, 2018.  (*Id*.).

On November 30, 2022, during the course of his employment, Bethel was confronted by William Ezell ("Ezell"), a union steward for the local union that represented bargaining employees of UPS, regarding a sign-up sheet for extra work posted by Bethel.  (Docs. 76 and 77).  During the confrontation, Ezell appeared hostile, made a threat towards Plaintiff, and used a racial epithet.  More specifically Ezell stated "You're about to get your shit in some trouble, boy!", "I have all kind of authority as a shop steward", and "I'm not taking someone talking to me this way."  (Doc. 76).  William Charles Plybon ("Plybon"), the direct full-time local sort supervisor over all part-time local sort supervisors (Bethel's direct supervisor) was present when this exchange took place, but did not initiate any disciplinary action against Ezell or report the incident through any UPS reporting channel. (*Id*.).

On December 1, 2022, Plaintiff with a union steward present, attempted to issue a disciplinary warning to Ezell and informed Ezell that the letter was the result of his failure to show dignity and respect for Ezell.  (*Id*.).  In response, Ezell laughed and walked away.  (*Id*.).  On December 5, 2022, Bethel, again with a union steward present, informed Ezell that he would be issuing Ezell a disciplinary action warning letter for directing a racial epithet to Bethel in November 2022.  (*Id*.).  Ezell stated his disagreement with Bethel.  (*Id*.).  Bethel also informed Ezell that he would report the incident to human resources. (*Id*.).

---

[1] The Court recites the Amended Complaint's factual allegations at the motion to dismiss stage.

On December 6, 2022, Bethel, with a union steward present, issued a disciplinary action warning letter against Ezell, that stated Ezell "failed to treat a local sort supervisor with dignity and respect by flagrantly and insolently calling him a racial epithet." (*Id*.). Bethel additionally gave Ezell a copy of the "UPS Professional Conduct and Anti-Harassment Policy" for him to read over and sign. (*Id*.). Ezell refused to sign the warning letter and objected to Bethel's subsequent indication on the warning letter that Ezell "refused to sign." (*Id*.). The same day, the warning letter issued to Ezell by Plaintiff was entered into a UPS reporting system for disciplinary actions that have been issued against hourly employees. (*Id*.).

On December 8, 2022, six senior UPS male hourly employees, who are members of the Black race, collectively went to the office of the business manager Caleb Ashcraft ("Ashcraft") to address Ezell's direction of a racial epithet to Plaintiff. (*Id*.). Those six employees reported their knowledge of the interaction between Ezell and Bethel to Ashcraft and the Division Manager, Tim Younge, and inquired what action management was going to take against Ezell. (*Id*.). Younge stated that he and Ashcraft were aware of the incident and assured the men that disciplinary action would be taken but indicated that corporate was going to handle the investigation of the incident. (*Id*.).

On December 15, 2022, Tammy Winstead, the Security Supervisor for the Southeast Territory of UPS, contacted Bethel following an anonymous call to the UPS Help Line reporting the incident with himself and Ezell. (*Id*.). Thereafter, Winstead emailed Plaintiff a "Voluntary Written Statement" form to be completed. (*Id*.). Ezell returned the completed written statement to Winstead on December 17, 2022. (*Id*.). Approximately one week later, Winstead met with Bethel and informed him that the UPS Human Resource department decided that no action would

be taken against Ezell because Ezell was already set to leave his employment with UPS the following week to become the President and Business Agent of the Teamsters Local Union No. 991. (*Id*.). However, Winstead informed Bethel that due to his violation of UPS's Zero Tolerance policy, Ezell would not be allowed to be re-employed with UPS in the future. (*Id*.).

On April 11, 2023, Ashcraft called Bethel into a meeting in his office. Tara Austin ("Austin") who represented herself as "HR," Plybon, and Anthony Hutcherson ("Hutcherson") also joined the meeting. (*Id*.). At the outset of the meeting, Ashcraft asked if any recording devices were present and when Bethel indicated his cell phone was recording, Ashcraft instructed him to stop recording. (*Id*.). Bethel stopped his recording and placed his phone on the desk, but Ashcraft instructed Hutcherson to confiscate Bethel's cell phone. (*Id*.). Hutcherson removed Bethel's phone from the room without Bethel's consent. (*Id*.). According to Bethel, it was known that he had recorded interactions on previous occasions. None of the other employees present had their phones removed. (*Id*.).

During the meeting, Ashcraft informed Bethel that he was "relieved of his duty of issuing discipline" to people at UPS and that issuing discipline was no longer in the scope of Plaintiff's job. (*Id*.). More specifically, Ashcraft informed Bethel he could no longer draft or issue disciplinary action warning letters to any part time hourly employee without Hutcherson or Plybon's presence and that he could no longer draft or issue any disciplinary action warning letters on any full-time employee at all. (*Id*.). Plaintiff was informed by Ashcraft that the changes were due to and/or on behalf of Ezell. (*Id*.). In response, Bethel indicated to Ashcraft that he expected backlash from his issuance of a warning letter to Ezell and his report of Ezell to UPS. (*Id*.). Ashcraft did not respond to Plaintiff's suggestion, but did not name another reason for the changes. (*Id*.). According to

Bethel, he also candidly asked Ashcraft if he was using Bethel's reports of Ezell's racial discrimination against Bethel as grounds for restricting Bethel's authority, to which Ashcraft responded, "yes." (*Id*.).

Prior to the removal of Bethel's authority to issue discipline, Bethel had issued approximately twenty (20) warning letters without issue. (*Id*.). Ashcraft informed Bethel that his warning letter to Ezell was improperly drafted because it included that Ezell had used a racial epithet, which was "*ad lib,*" a comment made up in the moment, and only Bethel's opinion or subjective thought, which were not valid reasons to include such details in a letter and violated the agreement with UPS and the union. (*Id*.).

According to Bethel, Plybon and Hutcherson, who are White, have drafted and/or issued disciplinary action warning letters that were not presented correctly and/or said correctly, or did not follow the procedure correctly without any repercussions. (*Id*.). Additionally, White part-time local sort supervisors (Andrew Dreyer and Kristen Haring) have improperly drafted and/or issued disciplinary action warning letters, without repercussions. (*Id*.).

Following the April 2023 meeting, Ashcraft also refused to authorize Bethel's log in credentials to the GTS timecard system in order for Bethel to correct timecard errors for hourly employees, while approving the same credentials to white part time supervisors. (*Id*.). In February 2024, a few weeks after Bethel's EEOC charge was closed, Ashcraft changed the locks on the building and refused to give Bethel key access, which he had previously had for six years, to perform his required supervisory duties to secure the building each Saturday night. (*Id*.). Ashcraft provided new key access to white part time supervisors. (*Id*.). Finally, following the meeting,

Ashcraft removed Bethel from the local sort supervisor's text messaging group and emails. (*Id*.). No white part time supervisors were removed. (*Id*.).

On June 26, 2024. Bethel sent a letter to the Corporate Legal Department of UPS identifying all employees present at the April 2023 meeting with Bethel and detailing the actions Bethel alleged were racially discriminatory and retaliatory and asked UPS to investigate. (*Id*.). Bethel was notified via email on July 18, 2023, that Phelps Dunbar was hired to represent UPS regarding Bethel's complaints. (*Id*.). On August 12 and 13, 2024, Bethel was interviewed by the UPS Security Investigation team regarding his concerns of discrimination and retaliation. (*Id*.).

On September 14, 2023, Bethel filed a charge with the EEOC. (*Id*.). On September 16, 2024, Ashcroft was terminated from his employment with UPS following an internal investigation of discriminatory practices at the Mobile, Al UPS packaging facility. (*Id*.). Similarly, Hutcherson was terminated on September 17, 2024. (*Id*.).

As a result of the above events, on April 26, 2024, Bethel filed the instant litigation. Bethel's Third Amended Complaint (Doc. 76) asserts the following claims:

> **Count One**: Discrimination under 2 U.S.C. § 2000e-2(a)(1);
>
> **Count Two**: Retaliation under 2 U.S.C. § 2000e-2(a)(1);
>
> **Count Three**: Race discrimination under 42 U.S.C. § 1981;
>
> **Count Four**: Retaliation under 42 U.S.C. § 1981;
>
> **Count Five**:  a state-law claim for conversion;
>
> **Count Six**: a state-law claim for intentional interference with contract or business relations; and
>
> **Count Seven**: a state-law claim for civil conspiracy;
>
> **Count Eight**: Vicarious Liability/Respondeat Superior;
>
> **Count Nine**: Misrepresentation/Fraud
>
> **Count Ten**: Negligent and Wanton Supervision (Alabama State Tort against UPS)

(*Id*.).

## II.    Standard of Review

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must view the allegations in the light most favorable to the plaintiff and accept the allegations of the complaint as true. *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1379 (11th Cir. 2010). To avoid dismissal, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations and quotations omitted).  The Court should not assess "whether a plaintiff will ultimately prevail but" consider "whether the claimant is entitled to offer evidence to support the claims." *Id*. at 583 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556.  "The Supreme Court's *Twombly* formulation of the pleading standard "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Williams v. Henry*, 2009 WL 3340465, at *2 (S.D. Ala. Oct.

15, 2009) (citations and internal quotations omitted). "A district court may properly dismiss a complaint if it rests only on 'conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts.'" *Magwood v. Sec'y, Florida Dep't of Corr.*, 652 F. App'x 841, 843 (11th Cir. 2016), cert. denied sub nom. *Magwood v. Jones*, 137 S. Ct. 675 (2017) (quoting *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003)).

Relevant here, a *pro se* litigant's "pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).

## III.    Analysis

### A.    Title VII Race Discrimination (Count I)

Bethel's Complaint ostensibly asserts claims for violations of Title VII for discrimination against Defendants Plybon, Austin, UPS, Ashcraft, and Hutcherson. However, Bethel concedes Counts I and II should be dismissed against Plybon, Austin, Ashcraft, and Hutcherson. (*See* Docs. 88 and 94). As a result, Count I is dismissed against Plybon, Austin, Ashcraft, and Hutcherson and this Court will only address the arguments with respect to this claim as against UPS.

UPS contends Plaintiff's Title VII claims are due to be dismissed because Plaintiff has failed to allege he suffered an adverse employment action. (Doc. 79). Alternatively, UPS contends Bethel's discrimination claim fails because he has not sufficiently alleged that but-for his race, he would not have suffered any discriminatory conduct. (*Id.*). In response, Plaintiff argues that removal of his authority to discipline workers without supervisory review constituted an adverse employment action. (Doc. 94). Further, Bethel submits he has sufficiently alleged his race was the but-for cause of his adverse employment action. (*Id.*)

Title VII prohibits employment discrimination based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). To establish a *prima facie* case of race discrimination Bethel must show: (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) the "employer treated 'similarly situated' employees outside h[is] class more favorably"; and (4) he was qualified to perform her job. *Lewis v. City of Union City*, 918 F.3d 1213, 1220 (11th Cir. 2019).

### 1.    Adverse Action

UPS argues that Bethel has not pled an adverse employment action because he has not alleged an ultimate employment decision such as discharge or failure to hire, or other conduct that altered his compensation, terms, conditions, or privileges of employment, deprives him of employment opportunities, or adversely affects his status as an employee. (Doc. 79) (relying on *Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Com'rs*, 512 F.3d 1296, 1300 (11th Cir. 2008).).

"[A]dverse employment action is an indispensable element of a Title VII plaintiff's case ...." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1246 (11th Cir. 2001). Therefore, to survive dismissal under Rule 12(b)(6), Bethel must allege the existence of at least one adverse employment action. Recently, the Supreme Court has clarified that to state an adverse employment action, a plaintiff's allegations "need only show *some injury* respecting ... employment terms or conditions" rather than "a significant employment disadvantage." *Muldrow v. City of St. Louis*, 601 U.S. 346, 359 (2024) ("The [employment action] must have left [the plaintiff] worse off, but need not have left her significantly so.").

In *Muldrow*, to resolve a circuit split, the Supreme Court addressed whether "an employee challenging a transfer under Title VII must meet a heightened threshold of harm – be

it dubbed significant, serious, or something similar." *Id*. Pre-*Muldrow*, in the Eleventh Circuit, the standard used was "a serious and material change". *Id*. at n.1 citing *Webb-Edwards v. Orange Cty. Sheriff 's Office*, 525 F.3d 1013, 1033 (11th Cir. 2008). The Court explained that Title VII requires an employee to show "some 'disadvantageous' change in an employment term or condition and reiterated that the 'terms [or] conditions' phrase" . . . "is not used 'in the narrow contractual sense', it covers more than the 'economic' or tangible.'" *Id*. at 354 (citation omitted). However, to make out a Title VII discrimination claim, an employee "must show some harm respecting an identifiable term or condition of employment." *Id*. at 354-55.

Here, Bethel alleges he was adversely affected because he was stripped of his ability to supervise, a required duty of his job. More specifically, Bethel's ability to reprimand hourly employees was restricted to approval by another supervisor. There is no dispute that this term did not affect Bethel's pay or his title, common factors in determining whether an adverse action took place. *See Webb*, at 1033 ("Her wages, benefits, or rank were not affected."). As a result, such an action falls outside the general scope of an adverse action. Nevertheless, Bethel alleges that this restriction was adverse because,

> "[t]he proficient performance of Plaintiff's duties and job responsibilities presents increased opportunity for Plaintiff's promotion, increase in pay and/or additional benefits within his employment business relationship with Defendant UPS. [. . . ]. Plaintiff's failure to perform his stated responsibilities would lead to disciplinary action, demotion or termination of Plaintiff's employment business relationship with Defendant UPS."

(Doc. 76). Accordingly, Bethel contends that removal of his supervisory authority did, in fact, affect a term of his employment and left him worse off.

At this stage, this Court is not inclined to find that Plaintiff has not pled an adverse action as a matter of law. While changes in job responsibilities alone may not typically be considered

serious enough to rise to an adverse action, in this instance, not only was Bethel's supervisory authority stripped from him, costing him his autonomy in supervising, but the action additionally subjected Bethel to *become* supervised.  It cannot be said that Plaintiff has not pled he was worse off.  The Court appreciates Defendants' argument that Bethel's claim fails because his alleged harm is "potential and speculative."  (Doc. 95).  However, as the Court reads Bethel's Complaint, once his supervisory authority was stripped, he could no longer adequately perform the required duties of his position and essentially became ineligible for advancement.  Post-*Muldrow*, the Court is not inclined to grant dismissal at this stage. While Plaintiff may struggle to support his factual allegations in the future, the Court finds that Plaintiff has sufficiently alleged enough facts to raise a reasonable expectation to conduct discovery to support his claim.  *See Williams, supra*.[2]

### 2.    But-for Causation

Next, UPS argues that Bethel's discrimination claims fail because Bethel has failed to plead to a level more than merely reciting conclusory allegations that but-for his race, the counseling he received would not have occurred. (Doc. 79).  UPS relies, in part, on *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1270 (11th Cir. 2004) to support its position that Bethel failed to put forth any facts to support UPS acted with racial animus.  (Doc. 79).  In *BellSouth*, the Eleventh Circuit dismissed a complaint for failure to state a claim based, in part, because Plaintiffs alleged only in a conclusory fashion that defendant's treatment of them differed from other white plaintiffs.  There, the Court stated, "[w]hen comparing similarly situated individuals to raise an inference of discriminatory motivation, the individuals must be similarly situated in all relevant

---

[2] Of note, the Defendants' motions to dismiss as to Bethel's other claims were built on the foundation that no adverse action was pled.  As such, this Court's single conclusion on this issue simultaneously negates most of Defendants' arguments as to Bethel's other claims.

respects besides race, *Jones v. Bessemer Carraway Medical Center*, 137 F.3d 1306, 1311 (11th Cir.1998) (involving Title VII claim), since '[d]ifferent treatment of dissimilarly situated persons does not violate' civil rights laws. *BellSouth*, 372 F.3d at 1273 (citation omitted).

Unlike in *Bellsouth*, here, Bethel has identified other part-time local sort supervisors, who are White, and alleged that those employees improperly drafted and/or issued disciplinary action warning letters (like him) but were treated more favorably than Plaintiff (by not having their supervisory authority taken away). Such allegations are distinguishable from the bare conclusory assertions in *BellSouth*. Again, considering the factual allegations in a light most favorable to Bethel, an inference of racial motivation has been pled to allow for discovery on this claim. As a result, this Court is not persuaded that dismissal is warranted.

### B.    Title VII Retaliation (Count II)

UPS argues that because Bethel's change in supervisory authority was not an adverse action, for purposes of his Discrimination claim, it equally fails to plausibly state a claim for retaliation. For the reasons addressed herein above, UPS' position that Bethel's discrimination claim fails is unconvincing. Likewise, UPS' motion with respect to retaliation is due to be denied for the same reasons.

Title VII prohibits an employer from retaliating against an employee "because he has opposed any practice" made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). To make out a *prima facie* case for Title VII retaliation, a plaintiff must show: (1) that he was engaged in statutorily protected activity, (2) that he suffered an adverse action, and (3) that the adverse action was causally related to the protected activity. *Gogel v. Kia Motors Mf'g of Ga., Inc., 967 F.3d 1121, 1134-35 (11th Cir. 2020) (citation omitted)*. The standard for materially adverse employment

actions in a Title VII retaliation claim are those that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Hudson v. Univ. of Ala. Healthcare Sys.*, 2016 WL 4132274 at *6 (S.D. Ala. August 3, 2016) (quoting *Burlington N. & Santa Fe Railway. v. White*, 548 U.S. 53, 64 (2006)). This is an "objective" standard in which the employee's subjective preferences are immaterial. *See Burlington*, 548 U.S. at 69.

Here, Bethel contends that as a result of his reporting race discrimination, he was subject to several actions. Namely, his supervisory authority was removed, his access to buildings was removed, he was excluded from emails to supervisors, and his access to the timeclock system was altered. In addition to its previous determination that Plaintiff has sufficiently pled an adverse action, the Court is also persuaded that the actions pled by Bethel here, would potentially dissuade an employer from reporting discrimination. Accordingly, dismissal at this stage, is not warranted.

### C.    § 1981 claims (Counts III and IV)

UPS, Plybon, Austin, Ashcraft, and Hutcherson contend that all claims made by Bethel pursuant to § 1981 are due to be dismissed for the same reasons his Title VII claims are due to be dismissed. (Docs. 79 and 80). Again, as this Court has determined that Bethel's Title VII claims may proceed against UPS, so may his claims brought against UPS pursuant to § 1981. *See e.g.* Gogel, 967 F.3d at 1134 ("Retaliation claims are also cognizable under 42 U.S.C. § 1981 and are analyzed under the same framework as Title VII claims.") citing to *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 452–57, 128 S.Ct. 1951, 170 L.Ed.2d 864 (2008); *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

13

As a result, this Court need only address this claim respect to the individually named defendants: Plybon, Austin, Ashcraft, and Hutcherson (collectively the "individual Defendants").[3]

### 1.    Individual § 1981

The individual Defendants seek dismissal of Bethel's § 1981 claims against them on the grounds that Bethel has failed to plead an affirmative link between themselves and the discriminatory conduct.  (Docs. 79 and 81).  The individual Defendants' arguments, for the most part, rely on their previous position that Plaintiff has not sufficiently pled an adverse action or but-for causation.  (*Id*.).

With respect to Austin and Plybon, Bethel alleges that prior to the April meeting they, as members of management, consented and agreed to remove Bethel's supervisory authority.  (Doc. 94).  In sum, Bethel alleges that Austin and Plybon were supervisors who took part in the causing him harm (by removing his authority) based on his race.  Again, Bethel relies on his white comparators to show that his race was a but-for cause of the employment action.  Similarly, with respect to Ashcraft and Hutcherson, Bethel contends that Ashcraft affirmatively stated his restriction of Bethel's supervisory authority was based on Bethel's reports of Ezell's race discrimination against Bethel and Hutcherson consented to such restriction.  Bethel additionally asserts that Austin, Plybon, and Hutcherson all failed to report the discrimination, making them complicit in the decision with Ashcraft to cause him harm.  (Doc. 88).

This Court has previously summarized the relevant authority on individual liability pursuant to § 1981 as follows:

---

[3] To the extent that it was ostensibly asserted, Bethel concedes this claim is due to be dismissed against Ezell. (*See* Doc. 86).

Unlike a Title VII claim, a § 1981 claim may be brought against an individual supervisor. *See, e.g., Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1176 (11th Cir. 2003) (noting that § 1981 "provide[s] for individual liability"); *Moss v. W & A Cleaners*, 111 F.Supp.2d 1181, 1187 (M.D. Ala.2000) ("Contrary to Title VII, individual employees can be held liable for discrimination under § 1981.") (citation and internal quotation marks omitted). Federal courts have held that a claim for individual liability under § 1981 requires an affirmative showing linking the individual defendant with the discriminatory action. *See Schanfield v. Sojitz Corp. of America*, 663 F.Supp.2d 305, 344 (S.D.N.Y.2009) (for personal liability to attach under § 1981, "[i]t must be shown that the defendant has personal involvement in the allegedly discriminatory conduct"); *Wallace v. DM Customs, Inc.*, 2006 WL 2882715, *7 (M.D. Fla. Oct. 6, 2006) ("To establish a claim for individual liability under § 1981, a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action [and] ... [t]he claim must be predicated on the actor's personal involvement.") (citations and internal quotation marks omitted).

*Page v. Winn-Dixie Montogomery, Inc.*, 702 F.Supp.2d 1334, 1355-56 (S.D. Ala. March 18, 2010).

The case for individual liability is thin. Nevertheless, this Court has already determined that Bethel has sufficiently pled Title VII and § 1981 causes of action for the reasons stated above. Given that the individual Defendants rely heavily on the insistence that those claims fail for lack of an adverse action and but-for causation, the Court is not satisfied Bethel's individual claims are subject to dismissal on the same grounds. Moreover, Bethel has alleged the individual Defendants were supervisors responsible for implementing his removal of supervisory authority (the alleged adverse action) due to his race, as evidenced by dissimilar treatment of his white comparators, and the comments made during the April meeting linking the action to Bethel's race discrimination claims. As a result, Bethel has pled that the Individual Defendants personally participated in the discrimination/retaliation and the Court will allow the § 1981 claims against the individual Defendants to proceed at this stage.

**D.    Conversion (Count V)**

Defendants Plybon, Austin, Ashcraft, and Hutcherson contend that dismissal is warranted as to Bethel's claim for conversion because he has failed to allege facts supporting that the removal of his phone during the April meeting was more than temporary.[4] (Docs. 79 and 81).  In response, Bethel argues that Defendants' position is based on the premise that the phone was returned to him at the end of the April meeting, facts which are not in the Complaint.  As such, Bethel contends the temporary nature of the taking is not a fact on which a 12(b)(6) motion can be granted.  (Doc. 94).

"To sustain a claim of conversion, there must be (1) a wrongful taking; (2) an illegal assertion of ownership; (3) an illegal use or misuse of another's property; or (4) a wrongful detention or interference with another's property."  *Drennen Lanc & Timber Co. v. Privett*, 643 So.2d 1347, 1349 (Ala. 1994) (citations omitted).  As a result, a conversion consists of

> "'either in the appropriation of the thing to the party's own use and beneficial enjoyment, or its destruction, or in exercising of dominion over it, in exclusion or defiance of the plaintiff's right, or in withholding the possession from the plaintiff, under a claim of title inconsistent with his own.'"

*Clardy v. Capital City Asphalt Co.*, 477 So.2d 350, 352 (Ala.1985), citing *Geneva Gin & Storage Co. v. Rawls,* 240 Ala. 320, 322, 199 So. 734 (1940) (quoting *Conner & Johnson v. Allen & Reynolds,* 33 Ala. 515, 517 (1859)). But "[t]he bare possession of property without some wrongful act in the acquisition of possession, or its detention, and without illegal assumption of ownership or illegal

---

[4] The individual Defendants also assert Bethel has alleged a criminal claim pursuant to AL Code § 13A-8-5 (1975) which is due to be dismissed.  Because Bethel's response clarifies that no such criminal claim is made, the Court need not address the same.  (*See* Doc. 94).

user or misuser, is not conversion." *Clardy,* 477 So.2d at 352, citing *Bolling v. Kirby,* 90 Ala. 215, 7 So. 914, 24 Am.St.Rep. 789 (1890).

Here, Bethel argues the Complaint lacks any facts supporting Defendants' position that the taking of his phone was temporary. However, while Bethel may have intentionally excluded such facts from his Complaint, he also failed to include any facts that the taking was substantial enough to interfere with his possessory rights. Instead, the Complaint indicates the phone was taken during the meeting without any factual support that it was not returned, misused, or that the removal interfered with his possessory interest in the property. Without such facts, his claim fails to state a plausible claim. Accordingly, Bethel has not alleged facts that a conversion took place and Count V is due to be dismissed.

     **E.**     **Interference with Business Relationship (VI)**

As an initial matter, Plaintiff concedes that he does not assert this claim against UPS, Plybon, Austin, Ashcraft, or Hutcherson. (Docs. 94 and 88). As a result, this Court need only address the claim with respect to Ezell.

According to Ezell, Bethel's claim for intentional interference with Business Relationship is due to be dismissed because the claim lacks non-conclusory allegations and is subject to the *Garmon* preemption. (Doc. 77). With respect to its secondary argument, Ezell relies on *Local 926, Int'l Union of Operating Eng'rs v. Jones*, 460 U.S. 669, 676 (1983). According to Ezell, in *Jones*, the Court upheld dismissal of a complaint where it alleged "a state law claim by a supervisor 'for interference by a union with his contractual relationships with his employer.'" (*See* Doc. 77).

In response, Bethel asserts he has pled non-conclusory allegations. Bethel also argues the facts here are distinguishable from those in *Jones* for two reasons: 1) this action was not

brought against a labor union organization and 2) does not involve collective-bargaining responsibilities.  (Doc. 86).  More plainly, Bethel contends that his allegations do not stem from Ezell's official union activities and/or allege unfair labor practices made by Ezell as an agent or on behalf of a union.  (*Id*.)

As an initial matter, Ezell's claim that Bethel's assertions are insufficiently conclusory are not targeted at any element of this specific claim or supported by any specific argument.  Since it is Ezell's burden to show dismissal is warranted, the Court finds he has not done so on this ground.  Next, Ezell's assertion that the *Garmon* pre-emption defeats Bethel's claim, is equally unsupported.    The relevant dispute is whether Bethel's claim is preempted by the doctrine set forth in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), (the "*Garmon* preemption" doctrine).  The *Garmon* pre-emption, "is intended to preclude state interference with the National Labor Relations Board's interpretation and active enforcement of the 'integrated scheme of regulation' established by the NLRA." *Id*. at 65 quoting *Golden State Transit Corp. v. Los Angeles*, 475 U.S. 608, 613, 106 S.Ct. 1395, 89 L.Ed.2d 616 (1986) (Golden State I). As such, *Garmon* pre-emption forbids States to "regulate activity that the NLRA protects, prohibits, or arguably protects or prohibits." *Id*. quoting *Wisconsin Dept. of Industry v. Gould Inc.*, 475 U.S. 282, 286, 106 S.Ct. 1057, 89 L.Ed.2d 223 (1986).  Accordingly, "[w]hen it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield." *Garmon*, 359 U.S. at 244, 79 S.Ct. at 779.  "When, however, the conduct at issue is only a peripheral concern of the Act or touches on interests so deeply rooted in local feeling and responsibility that, in the absence

of compelling congressional direction, it could not be inferred that Congress intended to deprive the state of the power to act, we refuse to invalidate state regulation or sanction of the conduct. *Jones,* at 677 (quoting *Garmon*, 359 U.S., at 243–244, 79 S.Ct., at 778.).

Although Ezell relies on *Jones*, he fails to address the necessary considerations for this Court to conclude that *Garmon*-preemptions applies.  Namely, his motion fails to address how the conduct is actually or arguably protected by the NLRA, i.e. is protected by § 7 or is an unfair labor practice under § 8 of the National Labor Relations Act.  (*See* Doc. 77).    To be clear, this Court is not determining that *Garmon* does not pre-empt Bethel's claims, it is merely determining that Ezell has not met his burden of establishing *Garmon* preempts Bethel's claim.  As a result, Bethel's claim survives this juncture.

F.      **Civil Conspiracy (Count VII)**

Defendants Ashcraft, Hutcherson, Plybon, and Austin (collectively "individual Defendants") contend that Bethel's civil conspiracy claim is due to be dismissed because it fundamentally relies on the existence of an underlying cause of action, which does not exist in this action. (Docs. 79 and 81).  More specifically, the individual Defendants point out that Bethel's conspiracy claim is based on their acting together to remove Bethel's supervisory authority and to remove his cell phone.  As a result, Defendants argue any claim of civil conspiracy based on Bethel's § 1981 claims or his conversion claims is subject to dismissal, because those claims fail to state a claim.  (*Id*.).  Alternatively, the individual Defendants seek dismissal based on the intra-corporate conspiracy doctrine.  (*Id*.).  Ezell argues Bethel's claim is based either on the conversion claim of his claim for intentional interference with a business relationship.  (Doc. 77).  Similarly, Ezell contends that because the Bethel's underlying claim for intentional interference with a

business relationship is preempted and his conversion claim fails, his conspiracy claim likewise fails. (*Id*.)

Plaintiff argues he has adequately asserted his underlying claims, defeating dismissal of his conspiracy claim. He does not fully address the intra-conspiracy doctrine except to point out that at the time of the April 2023 meeting, Austin misrepresented her capacity within UPS and therefore, was outside the scope of her employment. (Doc. 94). Finally, Bethel contends he has adequately alleged claims against Ezell to support his claim for conspiracy. (*Id*.).

Under Alabama common law, "[i]t is well established that 'liability for civil conspiracy rests upon the existence of an underlying wrong and [that] if the underlying wrong provides no cause of action, then neither does the conspiracy.'" *Ex parte Ala. Dep't of Transp. et al*., 764 So.2d 1263, 1271 (Ala. 2000) (alterations in original) (quoting *Jones v. BP Oil Co.*, 632 So.2d 435, 439 (Ala. 1993)). "Conspiracy is not an independent cause of action; therefore, when alleging conspiracy, a plaintiff must have a viable underlying cause of action." *Drill Parts & Serv. Co. v. Joy Mfg. Co.*, 619 So.2d 1280, 1290 (Ala. 1993).

For the reasons discussed herein above, Bethel's conversion claim is due to be dismissed. Accordingly, any claim for civil conspiracy based on the underlying conversion, likewise, fails. Conversely, this Court has determined that Plaintiff's underlying discrimination and retaliation claims may proceed, thereby defeating dismissal of any civil conspiracy related to those acts on the specific ground that the underlying cause of action fails.

Although Bethel's discrimination/retaliation claims may proceed, to the extent that his claims are based on UPS employees conspiring with each other, his claim still fails. Under the intra-corporate conspiracy doctrine, "a corporation cannot conspire with its employees, and its

employees, when acting in the scope of their employment, cannot conspire among themselves."
*Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001) (quoting *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc)).  Bethel did not address the intra-corporate conspiracy doctrine with respect to Plybon, Ashcraft, or Hutcherson. Further, Bethel's unsupported assertion that Austin was working outside the scope of her authority is unconvincing.  As a result, to the extent Bethel's conspiracy claim is based on the individual Defendant employees of UPS conspiring with each other or with their employer, such a claim is due to be dismissed.

Finally, because this Court has determined that Bethel's claim for intentional interference with a business relationship may proceed, Bethel's conspiracy claim based on that tort is not due to be dismissed for lack of an underlying tort.  Moreover, Ezell does not address the specific elements of this claim or otherwise argue why it is subject to dismissal under Fed. R. 12(b)(6).  As a result, Bethel's claim survives this juncture.

### G.    Vicarious Liability/Respondeat Superior (Count VIII)

Defendants seek dismissal of Count Eight on two grounds: (1) because respondeat superior is not a separate cause of action and (2) because the underlying causes of action are not plausibly alleged.  (Doc. 79)

There is no dispute that Bethel has asserted that UPS is liable for the acts of its employees in his other claims.  Moreover, Bethel did not respond to Defendants position that a respondeat superior claim is not a separate cause of action.  (*See* Doc. 94). Further, as pointed out by Defendants, because respondeat superior is not a separate cause of action, dismissal of this count is proper. *See Agee v. Mercedes-Benz U.S. Int'l, Inc.*, 2013 WL 832354, *9 (N.D. Ala. Feb. 28, 2013)

(granting Rule 12(b)(6) dismissal of respondeat superior claim after defendant correctly argued "respondeat superior is not a separate cause of action").  Accordingly, Count VIII is dismissed.

### H.    Misrepresentation/Fraud (Count IX)

Austin argues that Plaintiff's Misrepresentation claim should be dismissed because Bethel failed to plead particularity pursuant to Fed. R. Civ. Pro. 9(b) and failed to allege he suffered harm. (Doc. 79.)  Austin's position is based on the previous arguments that Bethel did not suffer an adverse action (injury).  According to Bethel, at the April 2023 meeting Austin represented herself as "HR", a material fact relating to her capacity as a UPS employee, on which Bethel relied to believe she was acting in his best interest.   In sum, Bethel contends that but for Austin's misrepresentation he would have asked for an HR supervisor who would have then prevented Ashcraft/Plybon from taking his phone and removing his supervisory authority. (Doc. 94.)

A plaintiff satisfies the particularity requirement of Fed. Civ. P. 9(b) if his or her fraud claim presents:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (internal quotations omitted). Moreover, to survive dismissal, Bethel must plead the following elements: '(1) a false representation (2) concerning a material fact (3) relied upon by the plaintiff (4) who was damaged as a proximate result.'" *Tran v. Allstate Ins. Co.*, 2015 WL 4488062, *4 (S.D. Ala. July 23, 2015) (citing *Fisher v. Comer Plantation*, 772 So.2d 455, 463 (Ala. 2000) (citation omitted).

Again, Austin's argument on this claim relies on the contention that no adverse action occurred, the argument fails because this Court has already determined that Bethel pled a plausible adverse action.   Moreover, Bethel has pled that on a specific date, Austin misrepresented her job capacity with UPS, on which Bethel relied, which resulted in Bethel not seeking to have an HR supervisor present.  Bethel then contends that the failure of having an HR Supervisor present, caused his supervisory authority to be restricted/removed improperly affecting his future employment opportunities.   At this stage, accepting Plaintiff's factual allegations as true, dismissal is not required.[5]

### I.        Negligent and Wanton Supervision (Count X)

UPS seeks dismissal of Bethel's negligent and wanton supervision claim for several reasons: (1) because claims against the individual Defendants fail, there is no wrongful act that UPS proximately cause by negligent supervision. (2) Bethel complains only about one incident- the April meeting, (3) Bethel fails to plead prior knowledge of incompetence by UPS, (4) Bethel fails to show proximate cause.  (Docs. 79 and 81).

In response, Bethel argues that UPS is liable because even after he informed UPS of "the incompetence of its employees", UPS failed to act for over a year causing him to suffer additional acts of discrimination and retaliation.  (Doc. 94).

This Court has previously set forth the relevant law for this claim as follows:

> "[t]o recover on negligent supervision and training claims against an employer, '[a] plaintiff must establish by affirmative proof' that the employer actually knew of the incompetence [of the employee], or that the employer reasonably should have known of it. *Southland Bank v. A & A Drywall Supply Co.*, 21 So.3d 1196, 1215–16 (Ala. 2008) (citation omitted) (explaining that claims for negligent

---

[5] To the extent that this claim is asserted against any individual Defendant other than Austin, such claims fail because the Complaint does not meet the particularity requirements of Fed. R. Civ. P. 9(b).

supervision and training are treated as one claim subject to the same standard) . . . The plaintiff meets this burden by either showing 'specific acts of incompetency and bringing them home to the knowledge of the master, or by showing them to be of such nature, character, and frequency that the master, in the exercise of due care, must have had them brought to his notice.' *Lane v. Cent. Bank of Ala., N.A.*, 425 So.2d 1098, 1100 (Ala.1983) (citation omitted)." *Speigner v. Shoal Creek Drummond Mine*, 402 Fed.Appx. 428, 433 (11th Cir. 2010) (unpublished). Moreover, one instance of misconduct is insufficient to establish liability against the employer under a negligent supervision/training claim. *Southland Bank*, 21 So.3d at 1216.

*Leslie v. Cumulus Media, Inc.*, 814 F. Supp. 2d 1326, 1347-48 (S.D. Ala. 2011).

Count X is due to be dismissed. Assuming the actions of the UPS employees during the April meeting were negligent, Bethel has not alleged any other instances of negligent conduct by the UPS employees prior to or following the April meeting. Accordingly, Bethel has not alleged facts showing the UPS employees were incompetent or that UPS was otherwise aware of the same. As a result, Count X is dismissed.

## IV.    Conclusion

After careful consideration of the relevant filings and arguments and for the reasons stated at the hearing and dictated herein above, Defendants' motions are **Granted in part and Denied in part.**

**DONE and ORDERED** this 27th day of August, 2025.

/s/ JEFFREY U. BEAVERSTOCK
CHIEF UNITED STATES DISTRICT JUDGE